UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 05-CR-10189-PBS |
| | ) | |
| | ) | |
| ANTHONY TONEY | ) | |

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant, Anthony Toney, moves this Court to suppress any and all evidence derived from the illegal seizure and search of his 2003 Lexis by the Boston police on May 8, 2005. As grounds therefor, the seizure and search of his automobile violated the Fourth Amendment.

### STATEMENT OF FACTS

Anthony Toney is charged in a single-count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922 (g) (1). The firearm and ammunition were seized during a purported inventory impoundment and search of Mr. Toney's car following his arrest by the Boston Police on May 8, 2005. The following facts regarding the arrest, impoundment, and search are taken from a Boston police incident report, the affidavit of Anthony Toney (attached as Exhibit A), the Boston Police Department inventory policy (attached as Exhibit B), and a traffic citation issued to Anthony Toney.

At around 12:39 a.m. on Sunday, May 8, 2005, Boston police officers Bowden and Brooks were randomly patrolling in Roxbury. As they approached Blue Hill Avenue on Moreland Street, the officers noted a red car illegally leave its travel lane to pass two other cars.

The police permitted the offending vehicle to pull ahead of them so that they could perform a motor vehicle stop. Once the car passed them, Bowden and Brooks activated the emergency lights and siren. The car continued to Woodville Street, where the driver made a left turn and then pulled over to the right.

Bowden and Brooks approached the driver and identified him as Anthony Toney. They told him the reason for the stop and ticketed him for failing to properly stay within his lane. That citation reflects that Mr. Toney resides no more than one block from the scene of the stop, and that he is the owner of the car.

Meanwhile, one of the officers ran a check on Mr. Toney's registration plate. The check disclosed that there was an active misdemeanor warrant out for Mr. Toney's arrest. The police determined to take Mr. Toney into custody on the warrant.

Prior to handcuffing Mr. Toney, Bowden and Brooks permitted him to call his girlfriend, Bonna Zerai, to come and take custody of the automobile. Using his cellphone, Mr. Toney called Ms. Zerai and told her that he had been stopped within walking distance of their house. He asked her to come to the scene of the stop and she agreed.

Ms. Zerai arrived as Mr. Toney was being handcuffed. Bowden and Brooks suggested to her that she take possession of the car, but told her that they were going to "check" it first. Neither Ms. Zerai nor Mr. Toney were asked for, or gave, consent to this "check."

Bowden and Brooks then began rummaging through Mr. Toney's car. At some point, Bowden unearthed a .25 caliber pistol in the pouch on the rear of the passenger seat, and Ms. Zerai heard the police say that they, "found something in the car." Subsequent to this announcement, Bowden and Brooks told Ms. Zerai that they were going to have the car towed,

and she returned home.

Mr. Toney denied knowledge or ownership of the gun and was transported to the police station. Additional officers arrived at Woodville Street and took pictures of the pistol and Mr. Toney's car, which was towed after Bowden and Brooks completed their purported 'inventory' of it.

## ARGUMENT

1.  ***The impoundment and inventory of Mr. Toney's car were a seizure and search within the meaning of the Fourth Amendment.***

    The Fourth Amendment prohibits unreasonable seizures and searches of citizens and their "effects." U.S. CONST. amend. IV. "[A]utomobiles are 'effects' and thus within the reach of the Fourth Amendment." South Dakota v. Opperman, 428 U.S. 364, 367 (1976) (citing Cady v. Dombrowski, 413 U.S. 433, 439 (1973)). Ordinarily, to satisfy the Fourth Amendment's reasonableness requirement a seizure and search must be supported by probable cause and a warrant. See, U.S. CONST. amend. IV; See also, Colorado v. Bertine, 479 U.S. 367, 371 (1987).

    The probable cause and warrant requirements of the Fourth Amendment admit of exceptions, however, including seizures and searches undertaken pursuant to law enforcement's "'community caretaking functions,'" that are totally divorced from the detection and investigation of crime. See, Opperman, 428 U.S. at 368-9 (quoting Cady, 413 U.S. at 441). The impoundment seizure and "inventory" search of automobiles are such exceptions to the warrant requirement. See, Bertine, 479 U.S. at 371 (citing Illinois v. Lafayette, 462 U.S. 640, 643 (1983)).

3

Thus, when the police determined to impound and inventory Mr. Toney's car rather than release it to his girlfriend, they seized and searched the vehicle within the meaning of the Fourth Amendment.

2. ***The impoundment and inventory of Mr. Toney's car were unreasonable because there was no reasonable necessity to seize and search under the circumstances.***

Although it is exempt from the probable cause and warrant requirements, to be reasonable under the Fourth Amendment the decision to impound and inventory must be guided by standard criteria that are rationally related to the purposes served by the impoundment and inventory search process. See, Bertine, 479 U.S. at 375-6. Specifically, the criteria must further the goals of, ". . . protection of the police from danger . . . protection of the police against claims and disputes over lost or stolen property . . . and protection of the owner's property while it remains in police custody." Opperman, 428 U.S. at 377 (Powell, J., concurring). Thus, the Boston Police Department inventory search policy provides that a car will be impounded and inventoried when, ". . . there is a danger to public safety; a danger to the vehicle being left unattended; a danger of theft or vandalism; or the possibility of false claims exists." See, Exhibit B at 3.

A mere recitation of these criteria is insufficient to justify an impoundment and inventory search. Rather, the application of these criteria in any given case must demonstrate that impoundment was a "reasonable necessity" under the circumstances. United States v. Ibarra, 725 F. Supp. 1195, 1202 (D. Wyo. 1989); Accord, United States v. Duguay, 93 F.3d 346, 353 (1996) (impoundment valid only if, "arrestee is otherwise unable to provide for the speedy and efficient removal of the car . . . "); United States v. Pappas, 735 F.2d 1232, 1234 (1984)

(Opperman does not permit impoundment and inventory search whenever car's owner arrested; where car was legally parked in a private lot, "there was no need for the impound and inventory search."); United States v. Donnelly, 885 F. Supp. 300, 307 (D. Mass. 1995) ("[E]ven according to" testifying officer's articulated criteria, where van, "was not blocking traffic . . . was not in a main artery . . . " it, "did not have to be impounded."); Commonwealth v. Brinson, 440 Mass. 609, 614-15 (2003) (impoundment illegitimate where car, "posed no public safety risk, and the record contains no evidence of threat of vandalism . . . ").

In this case, Anthony Toney was stopped no more than a block from his own home on a residential street early on a Sunday morning. (He pulled his car to the right curb, parking it lawfully.) The vehicle was not immediately adjacent to or obstructing a major thoroughfare, and it was not impeding traffic or other activity on Woodville Street. There was no reason to believe that Mr. Toney's car posed a danger or an inconvenience to the police or anyone else.

The police had no information to suggest that Mr. Toney's car or its contents would be susceptible to theft or vandalism if surrendered to his girlfriend, or even if temporarily left where it was parked. (In fact, Mr. Toney regularly parked his car on Woodville Street and never experienced such problems.) Additionally, the warrant on which Mr. Toney was arrested was for a mere misdemeanor. Moreover, Mr. Toney, through his girlfriend, was able to provide for, "the speedy and efficient removal" of his car. Duguay, 93 F. 3d at 353.

There was thus absolutely no justification, much less a "reasonable necessity," for the impoundment of Mr. Toney's vehicle. Ibarra, 725 F. Supp. at 1202.

3.  ***The impoundment and inventory of Mr. Toney's car were unreasonable because they were pretexts to search for evidence.***

For an impoundment and inventory search to be reasonable under the Fourth Amendment the police must be acting in good faith, and not using the impoundment and inventory as a pretext to conceal an investigatory motive. See, Opperman, 428 U.S. at 376; See also, Bertine, 479 U.S. at 372; Florida v. Wells, 495 U.S. 1, 4 (1990). The pretext inquiry seeks to establish whether the impoundment and search would, "'. . . have occurred at all but for the manipulation of circumstances and events by the police because of their desire to conduct a search which could not otherwise be lawfully made.'" United States v. Johnson, 815 F.2d 309, 315 (1987) (quoting 2 Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 7.5(e), at 141 (2d. ed. 1987)). See also, United States v. Goodrich, 183 F.Supp. 2d 135, 139 (2001).

Courts look to objective criteria to infer the presence of an impermissible investigatory motive driving an impoundment and purported inventory search. See, United States v. Abbott, 584 F. Supp. 442, 447 (W.D. Penn. 1984). Factors from which an impermissible motive may be inferred include, but are not limited to, a questionable impoundment, the brief expected length of the arrestee's detainment, and expressed preferences against the impoundment and inventory of his property by the arrestee. See, Abbott, 584 F. Supp. at 447-9 ("Logically, since an inventory search is to protect the owner's property, the owner, whenever available, should be given the opportunity to determine how he wants his property secured."); Accord, United States v. Lawson, 487 F. 2d 468, 477 (8th Cir. 1973):

> "...it should only be in the atypical case that police officers would find it necessary to conduct a general inventory search of an impounded vehicle. The owner of the property may be able to take reasonable steps to safeguard his property at the time of arrest, thus obviating the necessity of impoundment . . . [I]t is only reasonable that the owner be allowed to choose whether or not he wishes his car impounded. In cases where the owner or operator cannot make his wishes known . . . the property would be adequately safeguarded by rolling up the windows and locking the doors, subject, of course, to reasonable steps to safeguard property in plain view within the automobile."

In Mr. Toney's case, these factors weigh decisively in favor of finding an impermissible investigatory motive for the impoundment and search of his car.

First, Mr. Toney's car was impounded for no legitimate reason. As noted *supra*, the vehicle posed no danger or inconvenience to others, nor would Mr. Toney's car have been jeopardized by surrendering it to his girlfriend, Banna Zerai, or even by temporarily leaving it parked at the scene of the stop. The police simply improperly exercised their discretion under the Boston police inventory policy to impound and inventory Mr. Toney's automobile for purposes of investigation.

Second, there was no reason to believe that Mr. Toney would be detained and separated from his property for an extended period of time. The warrant leading to his arrest was for a misdemeanor offense. Prior to the search of his car and discovery of the gun, Bowden and Brooks had only charged Mr. Tony with a minor traffic infraction that would not have led to his continued detention in and of itself. There was thus no reason for the officers to believe that they could not leave Mr. Toney's car with Ms. Zerai, or where it was, pending his likely imminent release from police custody. The decision to impound and inventory the car thus

bespeaks a desire to root about for evidence of possible more serious offenses than those that were come upon legitimately.

Third, Mr. Toney clearly expressed to the officers his preference against the impoundment and search of his vehicle. He informed the police that he wanted his girlfriend to take his car and return it to their home, less than a block away from where it was parked. Mr. Toney's girlfriend in fact promptly arrived to take possession of the vehicle. There was no reason to believe that impoundment and inventory would provide for a safer disposition of Mr. Toney's car and the property in it than the arrangement that he himself made. The decision to ignore Mr. Toney's wishes, therefore, can only have been motivated by an investigatory purpose.

"There was no 'caretaking' rationale at all on these facts." Donnelly, 885 F. Supp. at 307. Instead, the facts and circumstances surrounding the impoundment and search of Mr. Toney's car demonstrate that the police were solely motivated by the desire to rummage about for evidence.

### REQUEST FOR EVIDENTIARY HEARING

Mr. Toney respectfully requests an evidentiary hearing on this motion and reserves the right to amend this motion and/or to file a reply memorandum and additional affidavits after receipt of the government's response.

8

ANTHONY TONEY,
By Oscar Cruz, Jr.,

/s/ Oscar Cruz, Jr.
Oscar Cruz, Jr.
B.B.O. #
Federal Defender Office
408 Atlantic Avenue
3rd Floor
Boston, MA  02110
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I, Oscar Cruz, Jr., hereby certify that a true copy of the above document was served upon Assistant United States Attorney Eugenia Carris by interoffice delivery on February 27, 2006.

/s/ Oscar Cruz, Jr.

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )  CRIMINAL NO. 05-10189-PBS<br>)<br>ANTHONY TONEY )  | |

### AFFIDAVIT OF ANTHONY TONEY

I, Anthony Toney, do hereby depose and say as follows:

1. I am the defendant in this case and on May 8, 2005, I was living in Roxbury, Massachusetts.

2. On May 8, 2005, I was arrested by Boston police a short distance from my home after a routine traffic stop.

3. I was driving my car home in order to deliver some food to my girlfriend, Banna Zerai.

4. After being informed that I was going to be arrested on an open warrant, I was handcuffed and placed in the back of the police wagon. I had already been allowed by the officers to call Ms. Zerai to come down the street to pick up her food and my car.

5. A short time later, the police officers questioned me and informed me that they had found a gun in my car. I was not aware that any gun was in the car that evening and I told the police that it most likely belonged to a person who had been in

the car right before the traffic stop.  I did not give them permission to search my car at any time.

    Signed under the pains and penalties of perjury this _27_ th day of February, 2006,

                                                _____
                                                Anthony Toney