UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 05-CR-10189-PBS |
| | ) | |
| | ) | |
| ANTHONY TONEY | ) | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM
IN RESPONSE TO THE GOVERNMENT'S OPPOSITION TO
<u>DEFENDANT'S MOTION TO SUPPRESS EVIDENCE</u>**

The defendant has filed a Motion to Suppress all evidence discovered as result of a search of his car conducted by members of the Boston Police Department on May 8, 2005.  As the facts of this case have essentially been set out in the defendant's first memorandum in support of his motion to suppress evidence, he will refer the court to those facts as it reviews this response to the government's opposition.  In addition to his argument regarding the lack of need for an inventory search in this case, the defendant further argues that the search was not constitutionally valid since it was conducted after the defendant was secured in the back of a police vehicle and since such search would not conceivably have produced evidence related to the case for which the arrest warrant had issued.

1

## **Argument**

1.  **The "bright line" rule created in <u>New York v.Belton</u> is ambiguous, at best, in practice.**

In <u>New York v. Belton</u>, the Supreme Court sought to create a "single, familiar standard . . . to guide police officers" as to when and what they may search in an automobile incident to the arrest of one of its occupants. <u>New York v. Belton</u>, 453 U.S. 454, 458 (1981). The "bright-line rule", as the dissent termed it, <u>id</u>. at 463, that the court settled on was that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" including any containers therein, <u>id</u>. at 460. The purpose of formulating a bright-line rule was, according to the court, to allow law enforcement officers, "who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront", <u>id</u>. at 458, to "know the scope of [their] authority", <u>id</u>. at 460. The purpose of these searches is to remove weapons and prevent the concealment or destruction of evidence. <u>Id</u>. at 457 (<u>citing</u> <u>Chimel v. California</u>, 395 U.S. 752 (1969)).

2

Despite the court's attempt to craft a bright-line rule, many questions were left unanswered by Belton. For example, in Thornton v. U.S., the court was asked to determine whether Belton applied to recent occupants of a vehicle (the officer pulled his car in behind the defendant's vehicle just as the defendant was getting out.) Thornton v. U.S., 541 U.S. 615 (2004). The court held that the police officer was still allowed to search the vehicle because in "all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle". Thornton v. U.S., 541 U.S. at 621 (2004). The court explained that Belton covered occupants and recent occupants of a vehicle alike because an arrestee who has recently exited a vehicle is no "less likely to attempt to lunge for a weapon or to destroy evidence if he is outside of, but still in control of, the vehicle." Id. at 621.

The court noted "an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search". Id. at 622. It has largely left the lower courts, however, the task of defining the temporal and spatial relationship a defendant must have with a vehicle to

3

come within the ambit of the Belton "bright-line rule."  One
court, following Thornton, found that a defendant was a recent
occupant of a vehicle even though he had not been seen inside the
vehicle.  U.S. v. Walston, 2005 WL 757592, *3 (D.Me., 2005).
The court's finding was based on the "extremely close spatial
relationship between the defendant and the vehicle (approximately
twenty feet)" and that it was "likely that he would enter the
passenger compartment frequently during the course of his shift"
(the defendant was arrested at work.) Id.

      Appellate courts have also struggled with what it means for
a search to be "contemporaneous" to an arrest.  In U.S. v.
Doward, the court upheld a search that was initiated immediately
after arrest but that continued after the defendant had been
handcuffed and for a short time after he had been transported
from the scene.  U.S. v. Doward, 41 F.3d 789 (1st Cir. 1994). In
explaining it's holding, the Doward court distinguished the
situation before it from others where the search initiated 30-45
minutes after the arrest.  Id. at N. 2. (citing United States v.
Vasey, 834 F.2d 782, 787 (9th Cir. 1987)).  The Doward court also
found it significant that the search was started while the
subject was at the scene, though it noted that courts were split

4

on whether this is a requirement of <u>Belton</u>. <u>Id</u>. (<u>comparing</u>
<u>United States v. Lugo</u>, 978 F.2d 631, 634 (10th Cir. 1992)
(invalidating search *initiated* after arrestee left scene) with
<u>United States v. McCrady</u>, 774 F.2d 868, 871-72 (8th Cir.1985)
(upholding search *initiated* after arrestee left scene)).

**2.   The faulty foundation of the *<u>Belton</u>* rule.**

The Supreme Court bases much of its <u>Belton</u> rationale on the
case of <u>U.S. v. Robinson</u>,414 U.S. 218 (1973). In <u>Robinson</u>, the
court created a bright-line rule that an arrestee's person may be
searched incident to a lawful arrest. <u>Id</u>. at 235. The court
combined this holding with its holding in <u>Chimel</u> stating that,
incident to an arrest, an officer may search the area within the
grabbing distance of the arrestee, to create the <u>Belton</u> bright-
line rule. <u>Belton</u>, 453 U.S. at 457. The problem with taking the
bright-line rule created in <u>Robinson</u> and applying it to other
situations is that the area being searched in <u>Robinson</u>, the
arrestee's person, is unique. It is, by definition, always under
the arrestee's control. A court would never be faced with the
question of whether the spatial distance separating an arrestee
from his person made a search invalid.

The logical flaw in Belton, according to Justice Scalia, is that one must assume "that the passenger compartment is 'in fact generally, even if not inevitably,' within the suspect's immediate control." Thornton, 541 U.S. at 627 (Scalia, J. dissenting) (citing Belton, 453 U.S., at 460). To prove his point, Justice Scalia gives examples of cases where an arrestee had been handcuffed and placed in the back of a squad car *before* the police initiated a search of the arrestee's vehicle. Emphasis added, Id. at 628. Examples of vehicle searches initiated by police after the suspect has been restrained are legion, according to Justice Scalia, and they belie the majority's holding that Belton searches are generally reasonable and that a "bright-line rule" is workable.

A Robinson search is also less likely to be plagued by the kind of questions about contemporaneousness that Belton searches inevitably engender. When an officer arrests someone, it is in that officer's interest to search that person as soon as possible. In a Belton type search, on the other hand, it is often in the officer's interest to delay searching the vehicle until the arrestee has been handcuffed and put somewhere secure (although this may not be possible.) Justice Scalia notes that

6

several courts have allowed searches after the suspect has been
secured in a squad car because securing an arrestee before the
search was in line with police procedures.  Justice Scalia
responds that:

> The weakness of this argument is that it assumes that,
> one way or another, the search must take place. But
> conducting a Chimel search is not the Government's
> right; it is an exception--justified by necessity--to a
> rule that would otherwise render the search unlawful.
> If "sensible police procedures" require that suspects
> be handcuffed and put in squad cars, then police should
> handcuff suspects, put them in squad cars, and not
> conduct the search. Indeed, if an officer leaves a
> suspect unrestrained nearby just to manufacture
> authority to search, one could argue that the search is
> unreasonable *precisely because* the dangerous conditions
> justifying it existed only by virtue of the officer's
> failure to follow sensible procedures.

Thornton, 541 U.S. at 627.

### 3.    Evidence that courts are generally uncomfortable with Belton type searches.

In the Thornton decision, several of the justices indicated
that, regardless of their opinion in that case, they found Belton
to be on increasingly shaky ground.  Justice O'Connor wrote, in
reference to Belton, that she was "dissatisf[ied] with the state
of the law in this area" and that "lower court decisions seem now
to treat the ability to search a vehicle incident to the arrest
of a recent occupant as a police entitlement rather than an

7

exception justified by the twin rationales of <u>Chimel</u>".  <u>Id</u>. at

624 (O'Connor, J. concurring in part).  Justice Scalia described

the state of the law regarding <u>Belton</u> searches in a similar

manner:

> [I]n our search for clarity, we have now abandoned our
> constitutional moorings and floated to a place where
> the law approves of purely exploratory searches of
> vehicles during which officers with no definite
> objective or reason for the search are allowed to
> rummage around in a car to see what they might find.

<u>Id</u>. at 628-629 (<u>quoting</u> <u>U.S. v. McLaughlin</u>, 170 F.3d 889, 894

(9th Cir. 1999) (Trott, J., concurring)).

This general discomfort with the state of the law

surrounding vehicle searches may explain why First Circuit

courts, while upholding the <u>Belton</u> bright-line rule, nonetheless

feel compelled to explain why the vehicle search was necessary.

For example, in <u>Doward</u> the court explained in a footnote:

> Although such considerations are not determinative, the
> unpredictable developments ultimately confronting the
> officers in this case clearly vindicate the <u>Belton</u>
> rationale. The male passenger in the Ford Mustang
> remained in close proximity to the vehicle during the
> arrest and the ensuing search. Moreover, Doward's
> daughter, who also--unbeknownst to the officers--was
> subject to an outstanding arrest warrant, unexpectedly
> approached the officers from out of the gathering
> crowd. With only two officers available to search the
> vehicle and deal with this potentially dangerous
> situation, a decisional rule which would require

8

judicial second-guessing of the need to continue the passenger-compartment search after Doward had been transported from the scene would eviscerate *Belton*'s bright-line rule.

U.S. v. Doward, 41 F.3d 789, n.5 (1st Cir. 1994).

Likewise, in U.S. v. Eaton, while the court stated that Belton obviates the need for a "specific determination . . . of the probability of the Defendant, standing next to the closed door of his vehicle, being able to gain immediate control of the gun under the front seat", 676 F.Supp. 362, 366-367 (D.Me.,1988), the court still noted in its description of the encounter that the defendant had not been handcuffed when the officer searched the car, id. at 364. Similarly, in other opinions courts explain that Belton searches don't need a justification but then note facts that justify the Belton search. U.S. v. Maling, 746 F.Supp. 223, 226 (D.Mass.,1990) (police officer had only one set of handcuffs for two arrestees); U.S. v. Jackson, 918 F.2d 236, 238 (1st Cir. 1990) (suspects made "furtive hand movements" and did not put their hands on the dashboard when told to do so); U.S. v. Sanchez, 892 F.Supp. 15, n.4 (D.Me.,1995) (officer had reason to believe the passenger, who was not under arrest, was lying about what she was doing).

**4.  A logical, constitutional, limitation on <u>Belton</u> searches – evidence gathering**.

In his dissent in <u>Thornton</u>, Justice Scalia suggests that "[i]f *Belton* searches are justifiable, it is not because the arrestee might grab a weapon or evidentiary item from his car, but simply because the car might contain evidence relevant to the crime for which he was arrested." <u>Thornton</u>, 541 U.S. at 629. This reasoning is more in line with the Court's logic regarding a similar kind of vehicle search: searches incident to *Terry* stops.

A *Terry* stop may be accompanied by "a purely protective search of the areas of an automobile where weapons may be hidden . . . if the officers "possess[ ] a reasonable belief based on 'specific and articulable facts which ... reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of the weapons." <u>U.S. v. Nee</u> 261 F.3d 79, *83 (1st Cir. 2001) (<u>quoting</u> <u>Michigan v. Long</u>, 463 U.S. 1032, 1049 (1983) (<u>quoting</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968))).  Why does a <u>Belton</u> search require a bright-line rule when a search under <u>Terry</u> does not?  Is an arrest any more dangerous than an investigative stop?

On the contrary, the Supreme Court has found that a *Terry* stop is more dangerous than a full arrest.  <u>Michigan v. Long</u>, 463 U.S. at 1052 ("[during a *Terry* stop] the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected") (citing <u>Terry</u>, 392 U.S. at 28) (but, see <u>Thornton</u>, 541 U.S. at 621 "custodial arrest is fluid and [t]he danger to the police officer flows from *the fact of the arrest,* and its attendant proximity, stress, and uncertainty'" (emphasis in original) (quoting <u>Robinson</u>, 414 U.S. at 234-235, and n.5)). Rather, the difference is that with a <u>Belton</u> search  "[a]n additional interest exists in the arrest context, i.e., preservation of evidence, and this justifies an 'automatic' search".  <u>Michigan v. Long</u>, 463 U.S. at 1050.

The <u>Walston</u> court, while seeming dissatisfied with the "wholesale rummaging without any real justification" engendered by <u>Belton</u>, nonetheless said that Justice Scalia had not yet provided guidance for what a better standard would be.  <u>Walston</u> 2005 WL 757592, *3. ("[defendant's] argument presupposes that Justice Scalia's rule is based upon a reasonable likelihood standard.  The rule, however, would appear to be simply grounded on a generalized "interest in gathering evidence.") (<u>quoting</u>

<u>Thornton</u>, 541 U.S. at 629).  Justice Scalia does say, however, that searches should be limited to "cases where it is reasonable to believe evidence *relevant to the crime of the arrest* might be found in the vehicle."  <u>Id</u>. (emphasis added). <u>Belton</u> cases often concern arrests for participation in drug conspiracies.  <u>See</u> <u>Jackson</u>, 918 F.2d 236; <u>U.S. v. Bautista</u>, 731 F.2d 97, *99 (C.A.Mass.,1984).  In the case of an arrest related to drug conspiracies, searching the car is usually reasonable because:

> Information about drug conspiracies tends to be "fresh," in the relevant sense, longer than information about other crimes because most drug conspiracies are to some extent lasting rather than existing for only a short period of time.

<u>U.S. v. Patrick</u>, 3 F.Supp.2d 95, 103 (D.Mass.,1998). In the instant case, a warrant naming the defendant for a past assault and battery would be less likely to be "fresh" and grounds for a vehicle search.

**5.    The search of the defendant's car on May 8, 2005 cannot be justified on grounds of a potential threat to officer safety or possible destruction of evidence.  The government bears the burden of showing the search was valid under <u>Belton</u>.**

The search of the defendant's car in this case perfectly illustrates the potential for law enforcement abuses under <u>Belton</u> warned of by Justices O'Connor and Scalia in the <u>Thornton</u> case.

12

The government cannot justify the search under the rationales set forth in Chimel, i.e. a threat of access to a weapon in the car by the defendant or the potential destruction of evidence in the car by the defendant.  The defendant was fully secured, in handcuffs, in the Boston Police vehicle before the search of his car began.  In addition, if one takes the next step and employs the test suggested by Justice Scalia in Thornton, i.e. the search of the car must then logically be for evidence *relevant to the crime of arrest*, the search in this case fails to pass constitutional muster.

The question becomes: What possible evidence could the officers hope to find relevant to a warrant for domestic assault and battery in the car?  Given the charge, a weapon could not possibly be involved.  Moreover, the only way in which to prove such an accusation would be through evidence of injuries suffered by the alleged victim or through his or her testimony if no injuries were sustained.  Neither of these things could be discovered as result of a search of the defendant's car on May 8, 2005.

Since the government's argument regarding an inventory search as an alternative justification arguably fails under the

facts presented, this court cannot, as the First Circuit did in
<u>Doward</u>, supra, drop a footnote in its findings in this case
stating that in addition to being valid under <u>Belton</u>, the search
of the defendant's car was also justified for another specific
reason.  Further, the defendant does not concede that either the
stop of the car or the arrest itself were valid.  In his
affidavit, the defendant describes the stop as a "routine traffic
stop" in order to distinguish it from a situation where the
police observe a person engaging in criminal conduct preceding a
stop.  The government bears the burden of producing evidence on
both of these issues in order for <u>Belton</u> to be considered as a
justification for the search.

## **REQUEST FOR AN EVIDENTIARY HEARING**

For all of the reasons stated above, the defendant's motion
to suppress evidence should be allowed.  The defendant requests
an evidentiary hearing.

ANTHONY TONEY
By his attorney,


 /s/Oscar Cruz, Jr.
Oscar Cruz, Jr.
B.B.O. #630813
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I, Oscar Cruz, Jr., hereby certify that this document filed
through the ECF system will be sent electronically to the
registered participant, Assistant U.S. Attorney Eugenia Carris,
as identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non-registered
participants on May 8, 2006

/s/ Oscar Cruz, Jr.
Oscar Cruz, Jr.

15