```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA   )
                           )
                           )
          v.               )    CRIMINAL NO. 05-CR-10189-PBS
                           )
                           )
ANTHONY TONEY              )
```

**DEFENDANT'S FURTHER SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE**

**I.   Argument:**

**A.   At the suppression hearing, the government's witnesses relied exclusively on the theory that the search of the defendant's car was justified as a valid inventory search pursuant to Boston Police Department procedure. The evidence presented at the hearing supports the defendant's contention that the search was not valid under either the Boston Police Department's written inventory policy or the United States Constitution.**

Under the Boston Police Department's written policy concerning the inventory search of automobiles that come into police custody, certain directives are given to officers regarding the situation where the operator of a motor vehicle is arrested. See Suppression hearing Government's Exhibit 4. Under Section 31, an officer is directed to safeguard the vehicle and is given four alternatives. Id. Alternative number one is to hand the car over to a person with apparent authority to take possession of it. Id. Having such an alternative available in a

1

situation involving the arrest of the owner/operator of a vehicle presupposes that the officers involved will first talk to the owner to see if someone trusted is available so the car can be disposed of in this manner.

This option is, arguably, the policy's preferred alternative since it serves both of the interests that the policy seeks to protect: first, the police don't need to take custody of the car in this situation so the possibility of false claims against them regarding lost or damaged property is minimized; and second, the vehicle is disposed of safely and in a manner which comports with the vehicle owner's wishes.  In this scenario, no inventory search is necessary.  Id.

In reviewing the testimony of the witnesses at the suppression hearing, the Court can find that once Mr. Toney, the car's registered owner, was arrested, Officers Bowden and Brooks did have some conversation with him regarding disposal of the car.  It is also uncontested that Mr. Toney was able to call Banna Zerai, his girlfriend, via cell phone, to come "downstairs to pick up" the food he had brought for her.  She was a short distance away from the car stop at their home at 21 Woodville Street.  This call occurred at 12:38 a.m., one minute before the officers did their first radio call to inform the police station

2

that they were involved in a traffic stop on Woodville Street in Roxbury.

During the time that it took Officers Bowden and Brooks to do Motor Vehicle Registry queries and license and warrant checks on Mr. Toney and his car, Ms. Zerai was able to quickly dress and walk to the scene of the car stop which she described as visible from the front door of her home.[1]

If the Court credits this version of events, then it must find that Ms. Zerai arrived at the scene of the car stop prior to the search of the car. If that is the case, then Officers Bowden and Brooks should have honored Mr. Toney's wishes and released the car to Ms. Zerai without conducting an inventory search.

Moreover, even if the Officers did not inquire about what Mr. Toney wanted done with the car, which is also arguably in violation of the policy, they should have released the car to Ms. Zerai as they confirmed who she was and knew she had apparent authority to take custody of the vehicle. Under these

---

[1] The defendant would ask the Court to credit Ms. Zerai's testimony concerning the close proximity of the car stop to her home at 21 Woodville Street. Although the Court has been provided with an aerial photograph of that area for general reference purposes, Ms. Zerai's description of the relatively short distance she walked to the scene of the car stop should be considered much more accurate given the length of time she has lived at that address and her undeniable familiarity with that area. In addition, Ms. Zerai did not suggest through her testimony that it took her an inordinately long amount of time to get dressed before she left her home. If the Court reviews a transcript of her testimony, it will necessarily draw the inference that she " got dressed" quickly, given the nature of Mr. Toney's call, and arrived at the scene of the traffic stop in short order.

3

circumstances, the search was invalid pursuant to the written policy and unconstitutional under the analysis set forth in the Supreme Court case of Colorado v. Bertine, 479 U.S. 367, 371 (1987).

The government's reliance on Whren v. United States, 517 U.S. 806 (1996), is misplaced.  The defendant is not suggesting that the Court should undertake a review of the officers subjective motivations in searching Mr. Toney's car.  The analysis of whether the inventory policy was implemented appropriately is of an objective nature and so Whren, supra, is not applicable.

**B.   If the search of the car fails as a valid and thus constitutionally permissible inventory search, the government should not benefit from that illegality by positing New York v. Belton as an alternative justification for the search.**

Although the defendant stands by the first position expressed in his Supplemental Memorandum which is that New York v. Belton, is distinguishable from this case factually and thus not applicable,[2] he also suggests to the Court that a Belton

---

[2] At the suppression hearing, the Court heard evidence that Mr. Toney was cooperative and that the officers were never in fear for their safety.  The police's only purported reason for stopping Mr. Toney was for a minor traffic violation and not because they had any information that he had been involved in criminal activity.  Once initially taken into custody on Woodville Street, no contraband items or dangerous weapons were discovered on Mr. Toney's person or in plain view in the car.  Mr. Toney was the sole occupant of the car and its legal owner.  Once Ms. Zerai arrived, she was cooperative with the officers requests and they testified that she posed no threat to them.  A third, armed, police officer arrived on scene while Ms. Zerai was present and Mr. Toney was secured in the wagon.  Although touted as a "bright-line" rule, Belton searches have routinely been upheld by appellate courts only

4

analysis is precluded in this case if the Court finds that Officers Bowden and Brooks violated Boston Police inventory procedures.  See New York v. Belton, 453 U.S. 454, 458 (1981).

It is clear from a review of the evidence presented at the suppression hearing that Officers Bowden and Brooks exclusively relied on their inventory policy as a justification for the car search.  Further, although the government raised the Belton, supra, argument in its Opposition, neither officer referred to it specifically in the testimony.[3]

Ultimately, the question for the Court becomes the following: How are the goals of the exclusionary rule, i.e. deterrence of future police misconduct, promoted by denying the defendant's motion under Belton?

Although defense counsel was not able to find a case on point dealing with the specific issues presented, he can refer the Court to the case of United States v. Scott, 270 F.3d 30 (1st Circuit 2001) as instructive.  In that case, the First Circuit

---

in instances where the search would have been justified for other reasons under a fact-driven analysis.  See e.g. U.S. v. Maling, 746 F.Supp. 223 (D.Mass., 1990)(police officer had only one set of handcuffs for two arrestee/occupants of vehicle); U.S. v. Jackson, 918 F.2d 236 (1st Circuit 1990)(suspects made "furtive hand movements" and did not put their hands on the dashboard when told to do so).

[3]In Government's Exhibit 4 from the Suppression Hearing, the Boston Police Inventory Search Policy cites a number of Supreme Court and Massachusetts cases as authority.  All of the cases cited deal exclusively with inventory searches.  New York v. Belton is not cited.

dealt with issue of what to do in a situation where incriminating evidence was obtained, in part, as result of law enforcement misconduct.

In Scott, the Court struggled with the notion that application of the inevitable discovery exception, under the facts as presented, would allow "the government to benefit at least somewhat from the unconstitutional actions of the Natick Police...". Id. at 44. Specifically, the police gained information from a co-defendant via a Miranda violation that, in large part, led to the discovery of evidence relative to the defendant's guilt. Id.

Moreover, the Court contemplated that "if here there were two illegalities rather than one, that arguably strengthens rather than weakens the need for suppression as a means of deterrence." Id. The First Circuit ultimately held that suppression of the evidence in that particular case would not have provided an incentive to unconstitutional behavior on the part of law enforcement. Id. at 45. However it did state that "Other cases may present different incentives and warrant a different outcome." Id.

6

In the case at bar, if the Court finds that the inventory search was not constitutionally permissible then it cannot deny the defendant's motion under the government's belated <u>Belton</u> argument. To do so would be to "provide an incentive for police misconduct and significantly weaken fourth amendment protection." <u>quoting</u> <u>United States v. Silvestri</u>, 787 F.2d 736, 744 (1st Cir. 1986).

## II. Conclusion

For all of the reasons stated above, the defendant's motion to suppress evidence should be allowed.

ANTHONY TONEY<br>
By his attorney,<br><br>
 /s/Oscar Cruz, Jr.<br>
Oscar Cruz, Jr.<br>
B.B.O. #630813<br>
Federal Defender Office<br>
408 Atlantic Avenue, 3rd Floor<br>
Boston, MA 02110<br>
Tel: 617-223-8061

<u>CERTIFICATE OF SERVICE</u>

I, Oscar Cruz, Jr., hereby certify that this document filed through the ECF system will be sent electronically to the registered participant, Assistant U.S. Attorney Eugenia Carris, as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 17, 2006.

/s/ Oscar Cruz, Jr.
Oscar Cruz, Jr.