```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

_____
                                  )
UNITED STATES OF AMERICA          )
                                  )
            v.                    ) CRIMINAL ACTION NO. 05-10189-PBS
                                  )
ANTHONY TONEY,                    )
                                  )
            Defendant.            )
_____)

**MEMORANDUM AND ORDER**

May 30, 2006

Saris, U.S.D.J.

### I. INTRODUCTION

Defendant Anthony Toney, charged with being a felon in possession of a firearm and ammunition, moves to suppress on the grounds that the police lacked a reasonable basis to stop his car and conducted an improper inventory search. At the evidentiary hearing, Boston Police Officers Thomas Brooks and James Bowden testified for the government. Banna Zerai, the defendant's longtime girlfriend, and Greer Toney, the defendant's mother, testified for the defense. After an evidentiary hearing and review of the post-hearing briefs, the Court **DENIES** the defendant's motions to suppress.

### II. FINDINGS OF FACT

Shortly after midnight on May 8, 2005, Boston Police Officers Thomas Brooks and James Bowden were patrolling Roxbury in their marked wagon. As the officers approached the intersection of Blue Hill Avenue and Moreland Street, they observed a red 2003 Lexus leave its travel lane, move into the

opposite lane of traffic, and improperly drive around two other cars stopped at a red light to turn right onto Blue Hill Avenue. While Toney did stop at the light before turning, the car protruded into the intersection, and Officer Bowden had to swerve to avoid hitting Toney's car. After Toney passed, the police activated their sirens and lights and followed. Surprisingly, Toney did not stop immediately. Rather, the car continued slowly along Blue Hill Avenue for two blocks and turned left onto Woodville Street, where the defendant pulled over on the right side of the street and parked the car.

Just before he pulled over, at about 12:38 a.m., Toney called his girlfriend, Banna Zerai, a mental health assistant with whom he resides in an apartment about a block away on the same street as the stop. After explaining he was being pulled over, Toney told Zerai to "come downstairs" and get the food he had purchased for her. Zerai dressed and walked down the block.

During the pursuit, Officer Brooks had checked the license plate number and learned that the car's owner, Toney, had an outstanding warrant. Toney's name was at the top of the warrant list, along with his birth date and features. Once the car pulled over, the police asked for the driver's license. Brooks checked Toney's license against the warrant list, and the information matched. At about 12:39 a.m., Officer Brooks downloaded a full copy of the warrant, which was an active misdemeanor arrest warrant for assault and battery issued by Dorchester District Court. Officer Brooks reported the stop and imminent arrest to the dispatcher.

The officers took Toney into custody and handcuffed him, and Officer Brooks secured Toney in the back of the patrol wagon. Toney was cooperative. The officers gave Toney a citation for failing to stay in his own lane. Neither officer saw anyone else at the scene at the time of the arrest. While Officer Brooks was placing the defendant in the cruiser, Officer Bowden began an inventory search of the car. The police intended to tow the car because it was parked in a high-crime zone. Zerai soon arrived at the scene -- after the search had begun, but before it was completed. Officer Bowden told her to stay back until it was completed. Toney asked Officer Brooks if Zerai could take the car, but Officer Brooks said no. After the search, the police gave her the submarine sandwich.

Officer Bowden found a .25 caliber pistol containing seven live rounds in the magazine pouch on the back of the passenger seat. It was not in plain sight. Officer Bowden then asked Officer Brooks to read Toney his Miranda rights. This took place between 12:39 and 12:48, the latter time being when the officers reported the discovery of the gun to their supervisor. Toney denied knowledge and ownership of the gun. He said that a man named Fan, who had been riding in the rear passenger seat until just prior to the traffic stop, must have left the gun in the car. Toney was unable to give the police any other information about Fan. At some point, a third officer arrived to take a photograph. The car was towed.

### III. DISCUSSION

Defendant attacks the stop and search on two grounds. The first challenge is easily dispatched. The police had a reasonable basis to stop the car based on a traffic violation of failing to stay in marked lanes. The police reasonably concluded that the defendant moved from his lane unsafely. See Mass. Gen. Laws ch. 89, § 4A.

Defendant next argues that the inventory search was invalid because his girlfriend was authorized to take the car home. Inventory searches are a recognized exception to the warrant requirement of the Fourth Amendment because they are a reasonable way to protect arrestees from theft and police from accusations of theft. See Colorado v. Bertine, 479 U.S. 367, 371-372 (1987). If the police have discretion as to whether to impound a vehicle, they must exercise it pursuant to "standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Id. at 375.

Boston Police Department Rules and Procedures state:

> When it is necessary to arrest the operator of a vehicle for a violation, the officer shall, if possible, order the offender out of the traffic flow to the street curb and make such arrest without unnecessary loss of time or the obstruction of traffic. When an arrest is made under such circumstances, proper measures for safeguarding the vehicle of the arrested person must be taken. It shall be the responsibility of the arresting officer to dispose of the car in the following manner:
>
> 1. leave it with a person having apparent authority to assume control of it; or
>
> 2. park it legally, close the windows, lock it, if possible, and attempt to notify the registered owner; or

       3. leave it at the side of the road with windows closed and locked, if possible, if traffic is not obstructed and arrangements can be made for its removal without undue delay; or

       4. have it towed for safekeeping.

(Boston Police Dep't Rules & Procedures, Rule 103 § 31.) The rules further state, "[w]hen an officer is securing a vehicle on the street (for example, a vehicle involved in an accident or one which was operated by a person now under arrest), which contains valuable property he shall whenever possible, ask the owner of the property how he wants it disposed of." (Id. § 32.) If the car is entrusted to a person having apparent authority, "the Officers never had lawful custody of the vehicle; [t]herefore no Inventory Search will be performed." (Police Commissioner's Special Order, #91-70.)

    "Case law supports the view that where a driver is arrested and there is no one *immediately* on hand to take possession, the officials have a legitimate non-investigatory reason for impounding the car." Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003). "[W]hat distinguishes a permissible from an impermissible seizure of a legally parked car is whether the police had reason to believe that someone was available who could be entrusted with the car." United States v. Goodrich, 183 F. Supp. 2d 135, 139-41, 143-45 (D. Mass. 2001) (holding that evidence from inventory search was tainted because wife was present to take custody of car and that police should not have impounded vehicle).

    Here, the government argues that the custody of the car passed from Toney to the police the moment Toney was arrested.

5

Toney contends that because he gave authority to his girlfriend to take the car, the inventory search was unauthorized under the policy. Even though the girlfriend likely arrived within a few minutes of the arrest and had authority to take the car, the car was in exclusive and lawful police custody for a period of time, albeit brief. Thus, the Boston Police Department Rules and Procedures permitted the officers to inventory the car to protect themselves from false claims.

As a post-script, even if the inventory search had been improper,[1] the police may properly conduct a search of the passenger compartment incident to a defendant's arrest. "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton, 453 U.S. 454, 460 (1981) (footnotes omitted). A broad reading of Belton was recently re-affirmed in Thornton v. United States, 541 U.S. 615, 619-23 (2004). The search is still proper even where, as here, the arrestee has been handcuffed and placed in a police vehicle when it commences. See United States v. Doward, 41 F.3d 789, 791, 794 (1st Cir. 1994). While the police officers were subjectively relying on a reading of

---

[1] The girlfriend testified she arrived before the arrest and was given the sandwich by the defendant through the driver-side window. I find this version unlikely given the location of the apartment, the fact that she had to get dressed, and the inherent improbability of the police permitting her to get her food in this way when a warrant check had turned up positive information. In addition, this version is different from the one initially presented by the defendant's brief -- that she arrived while he was being handcuffed.

inventory policy,[2] the bottom-line inquiry is whether the search was objectively reasonable.  <u>Whren v. United States</u>, 517 U.S. 806, 813-815 (1996).  It was.

## ORDER

The motions to suppress are **DENIED**.  (Docket Nos. 16 & 17.)

S/PATTI B. SARIS
United States District Judge

---

[2] The police seemed to believe the girlfriend did not have authority to take the car.  Although I disagree with the police on this point, it is irrelevant to the legal analysis.